No. 25-10808

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NANCY TRAY, ET AL.,

Plaintiffs-Appellants,

v.

FLORIDA STATE BOARD OF EDUCATION, ET AL.,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Case No. 4:24-cv-00238-AW-MAF

**APPELLEES' AMENDED BRIEF**

ALAN LAWSON
JESSICA SLATTEN
CAROLINE MAY POOR
**Lawson Huck Gonzalez, PLLC**
215 S. Monroe Street, Suite 320
Tallahassee, FL 32301
850-825-4334

*Counsel for Appellees*

Case No. 25-10808

*Tray, et al v. Florida State Board of Education*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel for Appellees, Florida State Board of Education, Ben Gibson, Ryan Petty, Monesia Brown, Esther Byrd, Grazie P. Christie, Kelly Garcia, Marylynn Magar, and Manny Diaz Jr.,[1] certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1. American Civil Liberties Union Foundation of Florida, Inc., *Counsel for Plaintiffs-Appellants*

2. Boyd, Sam, *Counsel for Plaintiffs-Appellants*

3. Brown, Monesia, *Defendant-Appellee*

4. Byrd, Esther, *Defendant-Appellee*

5. Caplan Cobb LLC, *Counsel for Plaintiffs-Appellants*

6. Christie, Grazie P., *Defendant-Appellee*

7. Cobb, James W., *Counsel for Plaintiffs-Appellants*

8. Democracy Forward Foundation, Inc., *Counsel for Plaintiffs-Appellants*

9. Diaz, Jr., Manny, *Defendant-Appellee*

10. Estroff, Alex, *Counsel for Plaintiffs-Appellants*

---

[1] Anastasios "Stasi" Kamoutsas replaced Diaz as Commissioner of Education in June 2025. *See* Fed. R. Civ. P. 25(d).

Case No. 25-10808
*Tray, et al v. Florida State Board of Education*

11. Ferrell, Stephana, *Plaintiff-Appellant*

12. Florida State Board of Education, *Defendant-Appellee*

13. Garcia, Kelly, *Defendant-Appellee*

14. Gibson, Ben, *Defendant-Appellee*

15. Kamoutsas, Anastasios "Stasi," *Defendant-Appellee*

16. Klorfein, Jarred A., *Counsel for Plaintiffs-Appellants*

17. Lawson, Alan, *Counsel for Defendants-Appellees*

18. Lawson Huck Gonzalez PLLC, *Counsel for Defendants-Appellees*

19. Long, Alan M., *Counsel for Plaintiffs-Appellants*

20. Magar, Marylynn, *Defendant-Appellee*

21. Menschel, Brooke, *Counsel for Plaintiffs-Appellants*

22. Past, Samantha J., *Counsel for Plaintiffs-Appellants*

23. Petty, Ryan, *Defendant-Appellee*

24. Poor, Caroline May, Counsel for Defendants-Appellees

25. Samburg, Mark B., *Counsel for Plaintiffs-Appellants*

26. Slatten, Jessica, *Counsel for Defendants-Appellees*

27. Southern Poverty Law Center, *Counsel for Plaintiffs-Appellants*

28. Thurston, Robin F., *Counsel for Plaintiffs-Appellants*

29. Tilley, Daniel B., *Counsel for Plaintiffs-Appellants*

30. Tray, Nancy, *Plaintiff-Appellant*

Case No. 25-10808
*Tray, et al v. Florida State Board of Education*

31. Treadwell, Raymond F., *Former Counsel for Defendants-Appellees*

32. Tressler, Anne Watts, *Plaintiff-Appellant*

33. Winsor, Hon. Allen, *District Judge*

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal challenges the constitutionality of a targeted administrative procedure that leverages parental feedback to ensure district school boards comply with statutory restrictions on sexually explicit and age-inappropriate content in public schools (the "State Review Process"). It requires the Court to consider whether administrative systems that use public participation to enforce state law constitute either an enforcement tool not subject to forum analysis, a vehicle for government speech, or a nonpublic forum. Oral argument will materially help the Court navigate the complex statutory and regulatory framework governing the State Review Process and evaluate the First Amendment implications of its status-based restrictions.

Moreover, despite the State Review Process's facially limited scope and objective, Appellants have sought to transform it into a broad public forum for debating public school content decisions. Oral argument will further help to correct Appellants' fundamental misunderstanding of the State Review Process's nature and purpose.

Appellees therefore respectfully request oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..................................................................CIP 2

STATEMENT REGARDING ORAL ARGUMENT .................................................i

TABLE OF CONTENTS ...........................................................................................ii

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUES .............................................................................2

INTRODUCTION .....................................................................................................3

STATEMENT OF THE CASE .................................................................................4

    I.      Evolution of the Law and Regulations ....................................................5

          A. H.B. 1069.........................................................................................7

          B. The Objection Template Rule.............................................................9

          C. The State Review Process Rule ........................................................12

    II.     Parental Input in Public School Material ................................................14

    III.    The Parents' Objections .........................................................................16

          A. St. Johns County Dispute..................................................................16

          B. Orange County Dispute .....................................................................17

    IV.    The Parents File Suit ..............................................................................18

STANDARD OF REVIEW .....................................................................................20

SUMMARY OF THE ARGUMENT.......................................................................21

ARGUMENT ...................................................................................22

    I.    The State Review Process Is Not Subject to Forum Analysis. ................23

          A. The Parents Misconstrue the State Review Process. ..........................24

          B. The State Review Process Is Incompatible with Forum Analysis. ...........................................................................................27

          C. The State Review Process Facilitates Government Speech...............30

    II.   The State Review Process Is a Nonpublic Forum with Lawful Restrictions that Are Reasonable and Viewpoint Neutral. ....................35

          A. The State Review Board Is a Nonpublic Forum. ...................................35

          B. The State Review Process Is Reasonable in Light of Its Purpose. ...........................................................................................38

          C. The State Review Process Draws Distinctions Based on Status, Not Viewpoint. ...................................................................................46

CONCLUSION ................................................................................53

CERTIFICATE OF SERVICE.........................................................54

CERTIFICATE OF COMPLIANCE ................................................54

# TABLE OF AUTHORITIES

## Cases

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009)........................................................40, 41, 45

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010)......................................................24

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982).................................................................40, 41

*Bethel Sch. Dist. No. 403 v. Fraser*,
  478 U.S. 675 (1986).................................................................41

*Borough of Duryea, Pa. v. Guarnieri*,
  564 U.S. 379 (2011).................................................................52

*Brennan v. Norton*,
  350 F.3d 399 (3d Cir. 2003).........................................................52

*Bryan v. Gates*,
  532 F.3d 888 (D.C. Cir. 2008)......................................................41

*Chandler v. Georgia Pub. Telecommunications Comm'n*,
  917 F.2d 486 (11th Cir. 1990).......................................................50

*Christian Legal Soc. v. Martinez*,
  561 U.S. 661 (2010)...........................................................27, 36, 45, 50

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985)............................................ 35-39, 42, 44-46, 48, 51

*Crowder v. Hous. Auth. of City of Atlanta*,
  990 F.2d 586 (11th Cir. 1993).......................................................45

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018)......................................................22

*Greer v. Spock*,
　424 U.S. 828 (1976).........................................................................44

*Gundy*, *Gundy v. City of Jacksonville Fla.*,
　50 F.4th 60 (11th Cir. 2022) ....................................................33, 41

*Honeyfund.com Inc. v. Governor*,
　94 F.4th 1272 (11th Cir. 2024) ....................................................48

*In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*,
　905 F.2d 1457 (11th Cir. 1990)........................................43, 44, 52, 53

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*,
　505 U.S. 672 (1992).......................................................................27

*Jaffke v. Dunham*,
　352 U.S. 280 (1957)........................................................................24

*Jara v. Nunez*,
　878 F.3d 1268 (11th Cir. 2018)......................................................20

*Johanns v. Livestock Mktg. Ass'n*,
　544 U.S. 550 (2005)........................................................................33

*Leake v. Drinkard*,
　14 F.4th 1242 (11th Cir. 2021) ...............................................22, 31

*M.N.C. of Hinesville, Inc. v. U.S. Dep't of Def.*,
　791 F.2d 1466 (11th Cir. 1986)...............................................37, 42

*Maglana v. Celebrity Cruises Inc.*,
　136 F.4th 1032 (11th Cir. 2025) ....................................................20

*McDonough v. Garcia*,
　116 F.4th 1319 (11th Cir. 2024) .........................................35, 45,  49

*McGriff v. City of Miami Beach*,
　84 F.4th 1330 (11th Cir. 2023) ......................................32, 33, 41

*Miami-Dade Cnty. v. City of Miami*,
  315 So. 3d 115 (Fla. Dist. Ct. App. 2020) ...................................................29

*Mech v. Sch. Bd.*,
  806 F.3d 1070 (11th Cir. 2015).................................................................41

*Mezibov v. Allen*,
  411 F.3d 712 (6th Cir. 2005).................................................................29, 30

*NAACP v. City of Philadelphia*,
  834 F.3d 435 (3d Cir. 2016).................................................................22, 38

*Nat'l Endowment for the Arts v. Finley*,
  524 U.S. 569 (1998) ...................................................................................27

*Otto v. City of Boca Raton, Florida*,
  981 F.3d 854 (11th Cir. 2020).................................................................49

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
  460 U.S. 37 (1983)................................................... 36, 38, 42, 44, 46-48, 51

*PETA, Inc. v. Gittens*,
  414 F.3d 23, 28 (D.C. Cir. 2005) .............................................................41

*Pleasant Grove City, Utah v. Summum*,
  555 U.S. 460 (2009)............................................................................30, 31

*Reed v. Town of Gilbert, Arizona*,
  576 U.S. 155 (2015).................................................................................49

*Reno v. Am. C.L. Union*,
  521 U.S. 844 (1997)...................................................................................45

*Robinson v. Fed. Nat. Mortg. Ass'n*,
  673 F.2d 1247 (11th Cir. 1982)................................................................20

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
  515 U.S. 819 (1995)............................................................................36, 51

*United States v. Am. Libr. Ass'n, Inc.*,
    539 U.S. 194 (2003)........................................................................27

*United States v. Monsanto*,
    491 U.S. 600 (1989)...............................................................14, 25

*Vidal v. Elster*,
    602 U.S. 286 (2024)........................................................................51

*Virgil v. Sch. Bd. of Columbia Cnty.*,
    862 F.2d 1517 (11th Cir. 1989)....................................................42

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015)..........................................................31-33, 35

*Wood v. Fla. Dep't of Educ.*,
    No. 24-11239, 2025 WL 1819099 (11th Cir. July 2, 2025)....................30, 41

**Constitutional Provisions**

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 2201 ...............................................................................1

42 U.S.C. § 1983 ..........................................................................1, 18

42 U.S.C. § 1988(b) .........................................................................19

**Statutes**

Fla. Stat. § 286.011.........................................................................15

Fla. Stat. § 286.0114(2).................................................................16

Fla. Stat. § 847.001(19)............................................................7, 8, 10

Fla. Stat. § 847.012.....................................................................7, 10

Fla. Stat. § 1006.28(2)(a) ..................................................................6

Fla. Stat. § 1006.28(2)(a)1 ........................................................................ 14

Fla. Stat. § 1006.28(2)(a)1.b. ................................................................... 40

Fla. Stat. § 1006.28(2)(a)2 ............................................................... 8-10, 12

Fla. Stat. § 1006.28(2)(a)2.b. ............................................ 8, 24-26, 38, 39

Fla. Stat. § 1006.28(2)(a)5 ................................................................. 15, 16

Fla. Stat. § 1006.28(2)(a)6 ........................................................ 9, 16, 38, 43

Fla. Stat. § 1006.28(2)(a)2b(I)-(IV) ........................................................ 7, 8

Fla. Stat. § 1006.28(2)(d) ....................................................................... 15

Fla. Stat. § 1006.28(2)(d)2.b ................................................................. 15

Fla. Stat. § 1006.28(2)(e)(3) ..................................................................... 6

Fla. Stat. § 1006.40(4)(b) ....................................................................... 15

Fla. Stat. § 1008.32 ................................................................................. 40

**Rules**

Fla. Admin. Code. R. 6A-1.094126 ..................................................... 9, 12

Fla. Admin. Code R. 6A-1.094126(4) ...................................................... 38

Fla. Admin. Code R. 6A-1.094126(5) ...................................................... 12

Fla. Admin. Code R. 6A-1.094126(7)(b) ................................................. 13

Fla. Admin. Code R. 6A-1.094126(8) ............................................ 13, 14, 33

Fla. Admin. Code R. 6A-1.094126(9) ...................................................... 14

Fla. Admin. Code R. 6A-1.094126(9)(c) ...................................... 14, 33, 34

Fla. Admin. Code R. 6A-1.094126(10) ................................................... 13

Fla. Admin. Code. R. 6A-7.0714 ...................................................................9, 10

Fla. Admin. Code. R. 6A-7.0714(3)(b) .................................................................10

Fla. Admin. Code. R. 6A-7.0714(3)(b)1.-3 .........................................................10

Fla. Admin. Code. R. 6A-7.0714(3)(c) .................................................................10

Fla. Admin. Code. R. 6A-7.0714(3)(d) .................................................................11

Fla. Admin. Code R. 6A-7.0714(3)(e) ..................................................................11

Fed. R. Civ. P. 25(d) ...............................................................................................5

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...............................................................25

Ch. 2017-177, § 2, Laws of Fla. .............................................................................6

Ch. 2022-21, § 2, Laws of Fla. ...............................................................................6

Ch. 2023-105, § 6, Laws of Fla. ..........................................................................8, 9

Ch. 2024-2, § 84, Laws of Fla. ...............................................................................8

Ch. 2024-101, § 15, Laws of Fla. ...........................................................................8

Ch. 2024-160, § 18, Laws of Fla. ...........................................................................8

Ch. 2025-6, § 107, Laws of Fla. .............................................................................8

Oxford Advanced Learner's Dictionary.............................................................51,52

Scalia & Garner, Reading Law: The Interpretation of Legal Texts
(1st ed. 2012)........................................................................................................14

The American Heritage Dictionary ......................................................................52

## STATEMENT OF JURISDICTION

The Appellees do not dispute Appellants' statement of jurisdiction, except to clarify that the district court had jurisdiction over this case under 28 U.S.C. §§ 1331, 2201, and 42 U.S.C. § 1983.

## STATEMENT OF THE ISSUES

1)    Appellants challenge the constitutionality of a state-created process that allows the Florida State Board of Education and Department of Education to conduct oversight on district school boards' denials of parental objections to public school material that contains content violative of Florida law (the "State Review Process"). Is forum analysis compatible with the unique features of the State Review Process, including its reporting function and quasi-judicial nature?

2)    Considering the extensive control the State exerts over the speech at issue, the likelihood that the public would view the results of the State Review Process as endorsed by the State, and the history of administrative enforcement proceedings, does the State Review Process constitute government speech?

3)    Is the State Review Process a nonpublic forum with speech restrictions that are status-based, reasonable in light of the State Review Process' purpose, and not an effort to suppress a viewpoint?

**INTRODUCTION**

This appeal arises from Appellants' fundamental misunderstanding surrounding a state-created process that uses parental feedback to ensure local district school boards uphold statutory content restrictions on public school materials (the "State Review Process"). Appellants seek to transform a targeted administrative oversight mechanism into a broad forum for challenging any school board decision regarding public school content. But the State Review Process is not a general-purpose grievance platform. It is a limited, quasi-judicial procedure designed to ensure that district school boards follow the law when they choose to retain materials that may violate statutory prohibitions on pornographic, sexually explicit, or otherwise age-inappropriate content for public school children.

The State Review Process does not turn on a parent's beliefs or the ideological nature of their objections. Rather, access is determined by whether a parent's formal objection to certain public-school material—based on the narrow, statutory criteria highlighted above—has been denied by their local school board. This status-based restriction on participation is reasonable in light of the State Review Process's purpose: to provide a check on district school boards' compliance with a Florida law on which books and other materials cannot be shelved. It is illegal for school boards to retain the controversial material the statute

3

prohibits and the only enforcement mechanism to ensure compliance are parental objections brought to the State Review Process.

Appellants' claims fail because they conflate their preferred policy outcomes for the books they want to see on public school library shelves with constitutional requirements for purely private speech—untethered to forum or any other appropriate limiting principles. The First Amendment does not compel the State to create a forum for every conceivable situation, nor does it prohibit the State from structuring administrative processes to serve specific regulatory goals. Ultimately, the State Review Process is not a forum at all; it is an administrative mechanism for enforcing state law or facilitating government speech. Alternatively, the State Review Process is a nonpublic forum, and its access restrictions are both reasonable and viewpoint neutral.

The district court correctly dismissed Appellants' claims for failure to state a constitutional violation. This Court should affirm that decision and reject Appellants' attempt to recast a targeted administrative enforcement tool as a platform for generalized policy debate.

## STATEMENT OF THE CASE

This is an appeal from the dismissal of a complaint that challenged the constitutionality of a Florida statute and implementing regulations that grant parents of public-school children the ability to alert the State of their district school

boards' decisions to reject statutory objections to controversial school materials. *See generally* Doc. 1.[2]

Appellants are parents of public-school students who disagree with their local district school boards' decisions to remove[3] controversial material from their children's public schools and have or plan to challenge their district school boards' decisions to remove those materials (the "Parents"). *Id*. ¶¶ 6, 9.

Appellees in this appeal include (1) the Florida State Board of Education (the "FSBE"), which supervises Florida's public school system, (2) the individual members of the FSBE, and (3) Manny Diaz Jr.,[4] the Commissioner of Education. ¶¶ 14-18. All the individual defendants were sued in their official capacities. *Id*. ¶¶ 15-18.

## I.     Evolution of the Law and Regulations

Understanding this case requires some background on the relevant statute and regulations' evolution. Briefly, in 2017, the Florida Legislature made each

---

[2] Appellees agree with the content of Appellants' Appendix and will not need to file a supplemental appendix. Record citations to "Doc. #" refer to the district court docket number and corresponding pincites refer to the pagination or paragraph number of the original document.

[3] Unless otherwise specified, the term "remove" refers to both complete removal and age-limit restrictions on the use of objectionable material.

[4] Anastasios "Stasi" Kamoutsas has since replaced Diaz as Florida's Commissioner of Education. *See* Fed. R. Civ. P. 25(d).

district school board "responsible for the content of all instructional materials and any other materials used in a classroom, made available in a school library, or included on a reading list." Ch. 2017-177, § 2, Laws of Fla. (codified at Fla. Stat. § 1006.28(2)(a)). The Legislature that year also mandated that each district school board adopt a policy to allow parents and county residents to raise objections to material used in classrooms, made available in a school library, or included on school reading lists. Ch. 2017-177, § 2. The district school boards' policies had to include a process for parents and residents to proffer evidence to the district school board that the objectionable material contained pornography, was not suited to student needs, or was otherwise inappropriate for the grade level and age group for which the material was used (the "Local Objection Process"). *Id*. The amendment further *required* school boards to discontinue use of material found to contain such "prohibited content." *Id*.

The Legislature added to the school district's oversight responsibilities in 2022, mandating that each district school board submit an annual report to the Commissioner of Education identifying the materials to which it received an objection, the specific objection, and whether materials were removed due to an objection, among other reporting requirements. Ch. 2022-21, § 2, Laws of Fla. (codified at Fla. Stat. § 1006.28(2)(e)(3)). It also required the Department of Education to publish and "regularly update" the list of materials that "were

removed or discontinued as a result of an objection" and "disseminate the list" to other school districts for consideration in their selection procedures. *Id.*

## A. H.B. 1069

The Parents do not challenge the Local Objection Process or the reporting requirements. They are instead concerned with amendments to section 1006.28 that the Legislature passed as H.B. 1069 in 2023. *See* Ch. 2023-105, § 6, Laws of Fla. The amendments did several things. First, they slightly expanded the bases on which a parent could formally object, to add material that depicts sexual conduct, *id.*, such that the statute now defines acceptable objections as:

> b. Any material used in a classroom, made available in a school or classroom library, or included on a reading list contains content which:
>> (I) Is pornographic or prohibited under s. 847.012;[5]
>> (II) Depicts or describes sexual conduct as defined in s. 847.001(19), unless such material is for a course required by s. 1003.46 or s. 1003.42(2)(o)1.g. or 3., or identified by State Board of Education rule;
>> (III) Is not suited to student needs and their ability to comprehend the material presented; or
>> (IV) Is inappropriate for the grade level and age group for which the material is used.

---

[5] Section 847.012 defines certain materials harmful to minors and provides criminal penalties for the sale or distribution of that material to a minor, and for using a minor in the production of the described material.

Fla. Stat. § 1006.28(2)(a)2b(I)-(IV) (the "Statutory Objections").[6]  Under H.B.

1069, the Statutory Objections are "prohibited content" and like its initial iteration,

the law requires the school district to "discontinue use of the material [containing

"prohibited content"] for any grade level or age group for which such use is

inappropriate or unsuitable." Fla. Stat. § 1006.28(2)(a)2.b.

Second, H.B. 1069 directed the FSBE to create an "objection form" for

parents and residents to use when objecting to material. Ch. 2023-105, § 6, Laws

of Fla. (codified at Fla. Stat. § 1006.28(2)(a)2.; *see infra* section I.B.

Third, it mandated the State Review Process, the administrative enforcement

process (that is central to this case) for parents to alert the State to the district

school board's decision to retain material they believe constitutes prohibited

content under the Statutory Objections—i.e., a district school board's denial of an

objection. The relevant administrative provision reads:

---

[6] Additional legislation that is not relevant to the Parents' claims or this dispute was passed in 2024 that amended parts of section 1006.28. *See* Ch. 2024-2, § 84; Ch. 2024-101, § 15; Ch. 2024-160, § 18, Laws of Fla. None of the new laws amended the relevant substance of the State Review Process. A portion of the 2024 bill did revise some of the cross citations to the statutory sections that are contained in one of the Statutory Objections. *See* Ch. 2024-2, § 84 (revising Statutory Objection (II) to read "[d]epicts or describes sexual conduct as defined in s. 847.001(19), unless such material is for a course required by s. 1003.46 **or**, s. **1003.42(2)(*o*)1.g. or 3.** ~~1003.42(2)(n)1.g., or s. 1003.42(2)(n)3.~~, or identified by State Board of Education rule"). The 2025 legislative session saw additional minor revisions to § 1006.28, but those changes are also not relevant to this dispute. *See* Ch. 2025-6, § 107, Laws of Fla.

If a parent disagrees with the determination made by the district school board on the objection to the use of a specific material, a parent may request the Commissioner of Education to appoint a special magistrate who is a member of The Florida Bar in good standing and who has at least 5 years' experience in administrative law. The special magistrate shall determine facts relating to the school district's determination, consider information provided by the parent and the school district, and render a recommended decision for resolution to the State Board of Education within 30 days after receipt of the request by the parent. The State Board of Education must approve or reject the recommended decision at its next regularly scheduled meeting that is more than 7 calendar days and no more than 30 days after the date the recommended decision is transmitted. The costs of the special magistrate shall be borne by the school district. The State Board of Education shall adopt rules, including forms, necessary to implement this subparagraph.

Ch. 2023-105, § 6, Laws of Fla. (codified at Fla. Stat. § 1006.28(2)(a)6.).

Finally, as relevant, it required the FSBE to promulgate rules and forms to help implement the Local Objection Process and State Review Process. *Id*.

Accordingly, the FSBE adopted Florida Administrative Code Rule 6A-7.0714 to provide school districts with a "Specific Material Objection Template" for parents to use when objecting to materials during the Local Objection Process (the "Objection Template Rule"). It also adopted Florida Administrative Code Rule 6A-1.094126 to map out the State Review Process (the "State Review Process Rule" described *infra* section I.C.).

## B. The Objection Template Rule

In 2023, the FSBE adopted the Objection Template Rule in compliance with § 1006.28(2)(a)2. to provide school districts with an "Objection Template" for

9

parents to use when objecting to materials under the Local Objection Process. Fla. Admin. Code. R. 6A-7.0714. Under the rule, Part I of the Objection Template must "be modified by school districts with information and directions based upon policies adopted by the school board to handle objections, as required by Section 1006.28(2)(a)2." Fla. Admin. Code. R. 6A-7.0714(3)(b). The rule instructs that the information in Part I "[b]e easily understandable"; feature information regarding the districts' submission, review, and disposition process for objections; and "[i]nclude district contact and submittal information for objections." Fla. Admin. Code. R. 6A-7.0714(3)(b)1.-3. The rule prohibits school districts from modifying Part II of the Objection Template—which features the limited Statutory Objections as the only bases to object using this process. Fla. Admin. Code. R. 6A-7.0714(3)(c).[7] Thus, the Objection Template provides the following unchangeable options for an objection:

☐ The material is pornographic.
☐ The material is prohibited under Section 847.012, F.S.
☐ The material depicts or describes sexual conduct as defined in Section 847.001(19), F.S.
☐ The material is not suited to student needs and their ability to comprehend the material.
☐ The material is inappropriate for the grade level and age group for which it is used.

---

[7] The rule does allow this section to be modified to add relevant weblinks to the school district boards' processes and objection forms and make a limited revision to the form's introduction. Fla. Admin. Code. R. 6A-7.0714(3)(c).

Objection Template § 3.[8]

Further, as relevant, the Rule allows school districts to modify the Objection Template's appearance "by placing it on their letterhead, changing the title or making other changes to the appearance of the template to assist in the ease of use." Fla. Admin. Code. R. 6A-7.0714(3)(d). Other than the specific modifications identified under the Rule, the Objection Template text "may not be modified." *Id*. The ban on modifications includes the six prompts included in the Objection Template for parents to provide details pertinent to their objection. *See id*. Those prompts include:

1. What brought this material to your attention?
2. Did you examine this material in its entirety? ☐ Yes ☐ No
   If not, what sections did you examine?
3. Identify the portion of the material objected to and why. (*You must be specific and provide page numbers, sections, or timestamps, as appropriate. You may attach additional information that does not fit within this form.*)
4. Is there any age or grade you would recommend this material?
   ☐ Yes ☐ No
   If yes, please specify:
5. Is there any value in this material?
6. What is your desired outcome for this material?
   ☐ Remove or discontinue use of material.
   ☐ Limit access to certain grade levels:
   ☐ Limit my child's access.
   ☐ Other:

---

[8] "The Objection Template entitled "Specific Material Objection Template" is available at http://www.flrules.org/Gateway/reference.asp?No=Ref-16015 and is incorporated by reference in the rule. Fla. Admin. Code R. 6A-7.0714(3)(e).

Objection Template § 4 (blank spaces for parent answers omitted).

## C. The State Review Process Rule

The FSBE adopted the State Review Process Rule the same year. *See* Fla. Admin. Code R. 6A-1.094126. The State Review Process Rule lays out the procedure for parents to request the appointment of a special magistrate if they disagree with their school district's decision to retain material to which they raised a Statutory Objection.

To access the State Review Process, a parent must:

(a) Complete the Parental Request form referenced in subsection (10) of this rule;
(b) Demonstrate that before filing the Parental Request, the parent filed an objection with the school board and the school board has either ruled on the objection or has failed to timely process the objection under s. 1006.28(2)(a)2., F.S., and the procedures adopted by the school board;
(c) Describe the nature of the original objection submitted to the district, including the title and ISBN of the specific material objected to and the reason for the objection;
(d) Describe how the district failed to establish an adequate policy to address objections to materials as required by s. 1006.28(2)(a)2., F.S., or failed to follow that policy when resolving the objection; and
(e) Describe the resolution sought from the Special Magistrate and the State Board of Education.

Fla. Admin. Code R. 6A-1.094126(5). The State Review Process Rule incorporates by reference the Parental Request Form, referenced in the rule, that parents must

complete to access the State Review Process. *See* Fla. Admin. Code R. 6A-1.094126(10).[9]

The Department of Education is tasked with reviewing each parental request to access the process and can dismiss requests based on five criteria largely concerned with whether the parent completed the Local Objection Process and provided enough information to adjudicate the dispute. *See* Fla. Admin. Code R. 6A-1.094126(7)(b). The Commissioner of Education then must review each parental request and decide whether to appoint a special magistrate based on these factors:

> (a) Whether there is authority and the ability to provide effective relief to the parent through the special magistrate process;
> (b) Whether the parent is seeking or has already sought relief in court;
> (c) Whether due to a change in circumstances, such as the school or district removed the specific material objected to or the district has agreed to reconsider the objection and remedy any procedural errors; and
> (d) Whether grounds for dismissal of the Parental Request, as described in paragraph (7)(b) of this rule, are found to exist.

Fla. Admin. Code R. 6A-1.094126(8).[10] If the Commissioner appoints a special

---

[9] The form is available at https://flrules.org/Gateway/reference.asp?No=Ref-15891 and titled "Parental Request for Appointment of a Special Magistrate for Materials Used in Classroom or School Libraries, Form No. SM-MAT."

[10] Appellants indicate that the Commissioner is required to appoint a special magistrate upon request unless one of the five grounds for dismissal is present. *See* Appellants' Brief at 21. ("Under this statutorily created State Review Process, the Commissioner *must* appoint a magistrate on a parent's request unless one of five regulatory exceptions applies."). But the rule's language does not suggest a

magistrate, the school district and parent engage in a process wherein they present evidence and witnesses at a hearing, submit written memoranda, and await the special magistrate's written recommendation for resolution to the FSBE. *See* Fla. Admin. Code R. 6A-1.094126(9). The FSBE must accept the special magistrate's findings of fact "unless they are not supported by competent, substantial evidence admitted at the hearing or stipulated by the parties" and conclusions of law "unless a contrary conclusion is more reasonable." *See* Fla. Admin. Code R. 6A-1.094126(9)(c).

## II. Parental Input in Public School Material

Each district school board is responsible for the content of all "materials used in a classroom, made available in a school or classroom library, or included on a reading list." Fla. Stat. § 1006.28(2)(a)1. The State Review Process deals with objections to material that the school district board has already selected, but even before parents consider accessing the State Review Process, they have multiple

---

mandatory requirement at all. *Cf. United States v. Monsanto*, 491 U.S. 600, 606–08 (1989) (considering indicia—not present here—of a mandatory requirement, including the use of the word "shall"); Scalia & Garner, Reading Law: The Interpretation of Legal Texts 114 (1st ed. 2012) (similar). The rule reads: "The Commissioner of Education will review each completed Parental Request that has not been dismissed by the Department under paragraph (7)(b) of this rule and decide whether to appoint a Special Magistrate utilizing the following factors . . . ." A more accurate reading of the regulation suggests the decision to appoint a magistrate is a discretionary one because it rests solely the Commissioner's judgment based on the factors detailed in subsection 8 of the rule. *See* Fla. Admin. Code R. 6A-1.094126(8).

avenues to voice their opinions on what material should be available to students in public schools.

Opportunities for parental participation begin even before the material reaches public school classrooms and libraries. By law, each school district board must adopt procedures to develop library collections (including classroom libraries) and those procedures, among other things, require consultation with "school community stakeholders." Fla. Stat. § 1006.28(2)(d)2.b. Each school district board also must adopt rules and procedures that "[p]rovide a process for public review of, public comment on, and the adoption of materials" used in the classroom or otherwise made available to students. *See* Fla. Stat. § 1006.40(4)(b). Upon written request, school districts are also required to provide access to any material maintained in their system libraries and available for review. Fla. Stat. § 1006.28(2)(d).

Parental input continues through the Local Objection Process as well. All meetings convened to resolve a parent or resident objection to specific material "must be noticed and open to the public" and subject to all relevant open meetings laws. *See* Fla. Stat. § 1006.28(2)(a)5.; *see also* Fla. Stat. § 286.011. Further, all meetings convened to hear objections must "include parents of students who will have access to such materials." Fla. Stat.

15

§ 1006.28(2)(a)5. Since all meetings to hear objections to materials are subject to Florida's open meetings law, members of the public, including parents, must "be given a reasonable opportunity to be heard." Fla. Stat. § 286.0114(2).

Indeed, the Parents here acknowledge that their school districts have heard their opinions regarding the removal of certain material from their children's public schools, and at least one of the Parents used the public meeting process to raise her objections. *See, e.g.*, Doc. 1 ¶ 101.

## III.    The Parents' Objections

The Parents disagree with their respective school districts' decisions to remove certain material from their children's schools and say they want to participate in the Sate Review Process but cannot because of the restrictions on who can participate. *See* Doc. 1 ¶ 9; Fla. Stat. § 1006.28(2)(a)6.

### A. St. Johns County Dispute

Parents Nancy Tray and Anne Watts Tressler are parents to students in the St. Johns County School District. Doc. 1 ¶¶ 11, 13, 97, 106. On May 28, 2024, their school district board restricted the use of *Slaughterhouse Five* by Kurt Vonnegut and *A Stolen Life* by Jaycee Lee Dugard to 11th and 12th graders and the *Freedom Writers Diary* by Erin Grunwell and *l8r, g8r* by Lauren Myracle to 12th grade students who have obtained parental consent. *Id*. ¶¶ 11, 13, 103, 110. The

board restricted the books' use after it received an objection about the books'
description of sexual conduct and "explicit, graphic, and violent disturbing
scenarios." *Id*. ¶¶ 11, 13, 100, 109. Before restricting access to the material, the
board held a hearing at which Parent Tray objected to the proposed restrictions. *Id*.
¶ 101. Parent Tressler also disagrees with the restrictions. *Id*. ¶¶ 111. Neither
Parent Tray nor Parent Tressler have tried to initiate the State Review Process
because they believe their efforts will be summarily denied and therefore futile. *Id*.
¶¶ 105, 115.

### B. Orange County Dispute

Parent Stephana Ferrell is an Orange County resident and a parent to
students in Orange County Public Schools. *Id*. ¶¶ 12, 71. On March 10, 2023, the
Orange County Public Schools removed *Shut Up!*, by Marilyn Robinson, from the
school district after a parent requested its removal. *Id*. ¶¶ 12, 72-77. On August 27,
2023, Ferrell appealed the decision to the Orange County Public Schools. *Id*.
¶¶ 77-78. The board denied the appeal for lack of standing on August 30, 2023
because the "statute does not expressly give authority to parents to challenge
removal of a book." *Id*. ¶ 78 (quoting Orange County Public School email to
Stephana Ferrell). On September 26, 2023, Ferrell sought to access the State
Review Process by submitting a Parental Request Form to the State Review
Process liaison. *Id*. ¶ 81. The Orange County Public Schools responded to Ferrell's

request on October 19, 2023, arguing that the State Review Process "can only be utilized by persons objecting to material containing material that is illegal to have in a school media center or material which may not be in a school media center under School Board policy." *Id*. ¶ 84. It also argued that Ferrell "does not have the right to use [Orange County Public Schools' procedures adopted] as required by § 1006.28(2)(a), Fla. Stat. because she is challenging the District's removal of the book *Shut Up!*, not its continued use by the District." *Id*. ¶ 86.

On February 28, 2024, the Commissioner of Education denied Ferrell's request. *Id.* ¶ 94.

## IV.   The Parents File Suit

On June 6, 2024, the Parents filed a complaint in the Northern District of Florida. The complaint laid out three claims—all three raised as viewpoint discrimination in violation of the First and Fourteenth Amendments to the Constitution and asserted under 42 U.S.C. § 1983.

Count I was an as-applied challenge to the State Review Process in H.B. 1069. *Id*. ¶¶ 116-23. It alleged that the State Review Process, as applied, is only available to those seeking "to express their disagreement with and challenge a local school board decision to *retain* (i.e., not to remove) specific material, but does not make that same process available to parents who seek to express their

disagreement with and challenge a local school board decision to *remove* specific material." *Id*. ¶ 119.

Count II was a facial challenge to the State Review Process Rule. *Id*. ¶¶ 124-29. The Parents alleged that on its face the law is "unavailable to parents who disagree with a local school board's determination to remove material pursuant to an objection," and therefore viewpoint discriminatory. *Id*. ¶¶ 128-29.

Count III was an as-applied challenge to the State Review Process Rule, including the Parental Request Form based on Appellees' denial, and expected future denial, of the Parents' requests to access the State Review Process to challenge a district's decision to remove material. *Id*. ¶¶ 94-96, 105, 115, 130-37.

Their complaint sought (1) a declaration that H.B. 1069 as applied, the State Review Process Rule, including the Parental Request Form, and the actions described in the Complaint violate the First and Fourteenth Amendments; (2) a permanent injunction blocking Appellees from initiating the State Review Process as implemented by the State Review Process Rule; (3) attorneys' fees and costs under 42 U.S.C. § 1988(b); (4) and other proper and just relief as determined by the district court. *Id*. at 35.

On June 27, 2024, Appellees moved to dismiss the complaint for lack of standing and failure to state a claim upon which relief can be granted. Doc. 11 at 1-24. On July 19, 2024, the Parents filed their response in opposition to Appellees'

motion to dismiss. Doc. 14 at 1-33. On January 27, 2025, the district court granted the motion to dismiss (the "Order"), finding that the Parents have standing but failed to state a claim. Doc. 15 at 1-18.

The district court determined that all three of the Parents' claims failed because the Parents' exclusion from the State Review Process is based on the speakers' status, not their speech. *Id*. at 10. The district court dismissed the Parents' complaint with leave to amend within 14 days. *Id*. at 17-18. The Parents let the 14 days expire, electing instead to appeal the decision. *See Robinson v. Fed. Nat. Mortg. Ass'n*, 673 F.2d 1247, 1249 (11th Cir. 1982).

On March 12, 2025, the Parents filed their Notice of Appeal to this Court.

## STANDARD OF REVIEW

The Court reviews a district court order granting a motion to dismiss *de novo*. *Jara v. Nunez*, 878 F.3d 1268, 1271–72 (11th Cir. 2018). It accepts as true the facts alleged in the complaint, drawing reasonable inferences in the plaintiffs' favor. *Maglana v. Celebrity Cruises Inc.*, 136 F.4th 1032, 1036–37 (11th Cir. 2025). The facts alleged in the complaint must present "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## SUMMARY OF THE ARGUMENT

Appellants' First Amendment claims fail because they rest on a flawed premise: that the State Review Process is a public forum for expressive activity. It is not. The State Review Process is better understood as an administrative enforcement mechanism whose function and nature are not conducive to serving as a forum and incompatible with forum analysis. Or it is simply a form of government speech as it tightly controlled by the state, limited in scope, and designed to oversee compliance with statutory mandates—historically a role of the state—not to amplify private viewpoints.

Alternatively, the State Review Process is a nonpublic forum and the state's decision to limit participation to parents whose statutorily defined objections have been denied is both reasonable and viewpoint neutral. The forum framework permits such status-based distinctions when they are consistent with the nonpublic forum's purpose. Here, the purpose is to ensure district school boards comply with their legal obligation to remove content that violates H.B. 1069—not to facilitate open-ended debate over the content of public-school material.

The district court correctly concluded that the Parents' exclusion from the State Review Process was based on procedural posture, not viewpoint. The law does not discriminate against parents who favor retaining materials; it simply does not provide a redundant oversight mechanism for decisions that already comply

with the law. The First Amendment does not require the State to create such a process, nor does it prohibit the State from structuring its activities to serve specific law enforcement functions.

Because the Parents have not plausibly alleged viewpoint discrimination, the district court's dismissal should be affirmed.

## ARGUMENT

The Parents have asserted three separate First Amendment claims. The gravamen of all three claims is whether the State Review Process discriminates against the Parents based on their viewpoint. *See* Doc. 1 ¶¶ 119, 126, 137; *see also* Doc. 15 at 9-10.

The First Amendment, which applies to Florida via the Fourteenth Amendment, *see Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018), provides that "Congress shall make no law . . . abridging the freedom of speech," U.S. CONST. AMEND. I. Whether the state has abridged a person's free speech right "depends crucially on whose speech is at issue," *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021), and where the speech occurs, *see Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985).

The State Review Process does not violate the Parents' First Amendment rights because it is an administrative enforcement tool, not a forum for private

speech. Another way to resolve this dispute is to find that the State Review Process facilitates government speech, such that the Parents' speech rights are not implicated at all.

Alternatively, as the district court found, the State Review Process is a nonpublic forum and the Parents' exclusion is reasonable in light of the State Review Board's purpose, which is to ensure district school boards comply with the law, which requires restrictions on school children's access to illegal material. The State Review Process is viewpoint neutral because it is based on the parents' procedural status and is not otherwise an effort to suppress speech.

The district court's dismissal should be affirmed.

**I. The State Review Process Is Not Subject to Forum Analysis.**

While the district court resolved this case via forum analysis and Appellees assert a valid forum-based argument *infra* section II, the unique features of the State Review Process beg for an analysis outside the bounds of traditional forum considerations. As the district court rightly identified, "an administrative process like the State Review Process does not fit neatly into any established forum analysis." Doc. 15 at 11.

The unique features of the State Review Process include: (1) that the procedure is quasi-judicial in nature; (2) a standing requirement for participation that is standard in any adjudicatory proceeding; (3) that the State Review Process is

limited to objections dictated by law, not private speech; (4) that the parents who access the State Review Process engage in the traditionally government role of enforcing state law; and (5) that the audience for the State Review Process is the FSBE itself, which is the final decisionmaker and can ignore the special magistrate's conclusions if it determines a different approach is "more reasonable."

Thus, the State Review Process is alternatively either completely incompatible with forum analysis or simply a way to facilitate government speech. In either case, Appellants' appeal must fail.[11]

## A. The Parents Misconstrue the State Review Process.

To begin with, the Parents fundamentally misconstrue the State Review Process. They view it as a free-standing process for parents to challenge and "debate[]" school district material decisions for any reason. Appellants' Brief at 4. But the State Review Process does not exist in the form they claim. The State Review Process is a limited device designed to uphold HB 1069's ban on school content that is pornographic, describes sexual conduct, is not suitable for student needs, or is otherwise inappropriate. Fla. Stat. § 1006.28(2)(a)2.b. The law is clear,

---

[11] "A successful party in the District Court may sustain its judgment on any ground that finds support in the record." *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 n.3 (11th Cir. 2010).

if the district school board finds that material in its schools contains "prohibited content" under the Statutory Objections—whether a parent objects to such content or not—the district school boards "*shall discontinue* use of the material for any grade level or age group for which such use is inappropriate or unsuitable." *See* Fla. Stat. § 1006.28(2)(a)2.b. (emphasis added).[12] The State Review Process allows parents whose school districts denied their Statutory Objection (based solely on the content restrictions in statute) and believe their school districts are out of compliance with the law, to challenge the school board's decision. Without the State Review Process, the district school boards' compliance with H.B. 1069 would be entirely self-enforcing. The State Review Process ensures district school board accountability.

By contrast, the Parents envision the State Review Process as markedly more expansive than it is. *See, e.g.*, Appellants' Brief at 4 (describing the State Review Board as a process "for parents to challenge a local school board's decision on whether to retain or remove a book in schools after an objection"); *id.* at 6 (the State Review Process "allow[s] challenges to local decisions on objections

---

[12] Removal of material that fits the Statutory Objections is a mandatory requirement. *See United States v. Monsanto*, 491 U.S. at 607 (noting when a statute read an offender "shall forfeit" that "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied."); *see also* SHALL, Black's Law Dictionary (12th ed. 2024) (defining "shall" as "[h]as a duty to; more broadly, is required to" and noting "[t]his is the mandatory sense that drafters typically intend and that courts typically uphold").

to a book's availability in school libraries"); *id*. at 44 (defining the State Review Process as "a state-created process that can redress their complaints on book removals"). They seek a forum where parents can object to district school board book decisions on any basis, including to object to a district school board's compliance with state law when the school district removes content that it finds to be violative of section 1006.28(2)(a)2.b.

HB 1069 mandates removal of content based on the district school board's *own* finding that the content fits into one of the Statutory Objections. *See* 1006.28(2)(a)2.b. (requiring removal if "the district school board finds that any other material contains prohibited content"). Upon a district school board's finding that—in the district school board's opinion alone—the content features prohibited content, then it must be removed. *See id*. Thus, the State Review Board Process is not a collaborative process where parents get to participate in the curation of school content, rather it is limited to ensuring that district school boards comply with an otherwise entirely self-policing state law. It gives the State oversight into the district school boards' decision-making processes, which require them by law to shield children from pornographic, sexual, or otherwise inappropriate content.

When a parent who has objected to a district school board's use of material accesses the State Review Process, she does so only on the basis of defined Statutory Objections. The State is under no obligation to create the kind of

freewheeling forum the Parents appear to seek and has not done so here. The government only creates a public forum "by intentionally opening a nontraditional forum for public discourse." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680 (1992) (quotation omitted). It "does not create a public forum by inaction or by permitting limited discourse." *Cornelius*, 473 U.S. at 802.

The question, therefore, is whether the State Review Process as it is actually defined and exists—not as the Parents wish it was defined—violates the Parents' free speech rights. It does not. *See Christian Legal Soc. v. Martinez*, 561 U.S. 661, 692 (2010) (explaining the challengers' claims "confuse[] [their] preferred policy with constitutional limitation—the *advisability* of [the] policy does not control its *permissibility*").

### B. The State Review Process Is Incompatible with Forum Analysis.

The State Review Process is an administrative tool—not a forum—and its statutory limitations are consistent with its law enforcement function. The Supreme Court has declined to apply forum analysis in situations where the nature and function of the would-be forum is incompatible with the forum framework. *See, e.g., United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 205 (2003) (plurality opinion); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586 (1998).

In *United States v. American Library Association, Inc.*, for example, the Supreme Court held that forum framework was incompatible with analyzing public

libraries' use of internet filtering software due to the unique role and discretion public libraries have in selecting materials for their collections. 539 U.S. at 205. The Court reasoned that internet access in public libraries, has a limited history and so cannot be considered a traditional forum. *Id.* at 205-06. Further, public libraries "do[] not acquire Internet terminals in order to create a public forum for Web publishers to express themselves, any more than it collects books in order to provide a public forum for the authors of books to speak." *Id.* at 206. The Court therefore determined that internet filtering in public libraries is similar to the discretion libraries have in selecting books. *Id.* at 205–07. And the decision to filter categories like pornography is consistent with libraries' traditional practice of excluding similar content from print collections. *Id.* at 207–08. "Thus, the public forum principles . . . [we]re out of place in the context of this case." *Id.* at 205.

Similarly, in *National Endowment for the Arts v. Finley*, the Supreme Court declined to apply forum principles to a funding program that required the National Endowment for the Arts to ensure that "artistic excellence and artistic merit are the criteria by which [grant] applications are judged, taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public." 524 U.S. at 572, 585. In rejecting application of the forum framework, the Court explained that "[a]ny content based considerations that may be taken into account in the grant making process are a consequence of the nature of artistic

funding." *Id.* at 585. It further reasoned that forum analysis would conflict with "NEA's mandate ... to make esthetic judgments, and the inherently content based 'excellence' threshold for NEA support." *Id.* at 586.

Just as the function and nature of the relevant processes were incompatible with forum analysis in *American Library Association, Inc.* and *Finley*, forum analysis is incompatible with the State Review Process' reporting and enforcement function (alerting state officials to possible violations of state law) and quasi-judicial nature. *See Miami-Dade Cnty. v. City of Miami*, 315 So. 3d 115, 120 (Fla. Dist. Ct. App. 2020) (identifying the characteristics of a quasi-judicial proceeding). Governments often set up systems for people to file complaints as a notification mechanism to flag potential problems without simultaneously opening those systems up as a public forum. For example, a government utility might let people report power outages without also providing a process to let people report that their power is on. A licensing agency might have a process for complaints about licensees while not simultaneously accepting compliments. A health department might accept reports of unsanitary conditions, but not clean ones. The federal courts' electronic filing system allows litigants to file legal complaints about alleged violations of law; but it is not place for debate or praise for following the law. The federal courts have also been unwilling to apply the First Amendment to places like the courtroom. *See Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005)

(noting that although "the courtroom seems like the quintessential arena for public debate, [] upon closer analysis, it is clear this is not, and never has been, an arena for free debate"); *see also id.* at 718 (noting the courtroom is a unique nonpublic forum because "we regularly countenance the application of even viewpoint-discriminatory restrictions on speech") (collecting authorities).

The Legislature did not mandate the State Review Process's creation to open a public forum, but to alert the State of potential violations of state law. The State Review Process is not meant to collect general opinions or encourage public discussion but to ensure compliance with state law. That the State leverages parental feedback in performance of its oversight work does not transform the State Review Process into a forum that implicates free speech rights.

## C. The State Review Process Facilitates Government Speech.

Forum analysis is also improper when the government is speaking because government speech is not subject to the Free Speech Clause. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."); *see also Wood v. Fla. Dep't of Educ.*, No. 24-11239, 2025 WL 1819099, at *5 (11th Cir. July 2, 2025). This feature of government speech does not change even if private sources participate in delivering the government's message. *See id.* at 468.

Although there is not a "precise test" for what constitutes government speech, the Supreme Court has identified three relevant factors. *Leake*, 14 F.4th at 1248. One factor looks at the amount of control the government exerts over the speech. *Walker*, 576 U.S. at 210. Another factor considers whether the public would interpret the speech as conveying a government message. *See id*. The final factor looks at the history of the speech and asks whether it has traditionally communicated messages on the government's behalf. *Id*. 209-10. "These factors are neither individually nor jointly necessary for speech to constitute government speech." *Leake*, 14 F.4th at 1248.

For example, in *Pleasant Grove City, Utah v. Summum*, the Supreme Court determined that monuments in a public park were government speech such that the city could deny a group's request to erect a monument, even though many of the monuments were donated by private parties. 555 U.S. at 473. The Court reasoned, in part, that the city "effectively controlled" the messages the monuments sent by "select[ing] those monuments that it wants to display for the purpose of presenting the image of the City that it wishes to project . . . [and] has taken ownership of most of the monuments in the Park." *Id.*

Similarly, in *Walker v. Texas Division Sons of Confederate Veterans, Inc.*, the Supreme Court considered whether license plate designs proposed by private parties and approved for display on registered vehicles by the Texas Department of

31

Motor Vehicles Board constituted a public forum or government speech. 576 U.S. at 214-19. In finding that the speech at issue was government speech, the Court reasoned that "Texas is not simply managing government property, but instead is engaging in expressive conduct." *Id*. at 216. It reached that conclusion by considering the "effective control that the State exerts over the design selection process," that the public would interpret the messages as being endorsed by the government, and determining that there was a history of states conveying messages via license plates. *Id*. at 210–14, 216. In *Walker*, therefore, the "policies and nature" of the license plates indicated that Texas had not created a forum, it was just speaking. *Id*. at 216.

Likewise, in *McGriff v. City of Miami Beach*, this Court found that a city was engaged in government speech when it selected some artwork, but not others, to display at a city art installation. 84 F.4th 1330, 1334 (11th Cir. 2023). Among the reasons the court highlighted for its decision was that the city funded and took ownership of the art, controlled how it would be disseminated, and it was subject to the approval of the city manager. *Id.* at 1335.

Here, the control, perception, and history of the State Review Process indicate that like the government entities in *Summum*, *Walker*, and *McGriff*, Florida did not intend to create a forum either; it too is simply speaking. *Walker*, 576 U.S. at 216.

32

First, the State exerts nearly total control over the content of the State Review Process. The law specifically dictates what objections can be raised. Additionally, the Commissioner of Education exercises final authority over which objections can actually proceed to the State Review Process. *See* Fla. Admin. Code R. 6A-1.094126(8); *Walker*, 576 U.S. at 216. Thus, the State controls the State Review Process because it solicits specific objections, controls the parameters of the objections, and the Commissioner of Education selects objections to proceed to the State Review Process. *See McGriff*, 84 F.4th at 1334-35. The fact that private parties are involved does not change the analysis; "[w]hen, as here, the government sets the overall message to be communicated and approves every word that is disseminated, it is not precluded from relying on the government-speech doctrine merely because it solicits assistance from nongovernmental sources in developing specific messages." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005); *see also Gundy*, *Gundy v. City of Jacksonville Fla.*, 50 F.4th 60, 79 (11th Cir. 2022) ("the fact that a 'private part[y] take[s] part in the ... propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider'") (quoting *Walker*, 576 U.S. at 217).

As to State endorsement, the FSBE is the final authority to resolve objections that proceed to the State Review Process. *See* Fla. Admin. Code R. 6A-

1.094126(9)(c) ("The Special Magistrate's conclusions of law must be accepted by the [FSBE] *unless a contrary conclusion is more reasonable*.") (emphasis added). The results of the State Review Process are undeniably endorsed by the FSBE because it has final decision-making authority, and the public is therefore likely to view the State Review Process as a state-endorsed enforcement mechanism.

Finally, although the State Review Process is a new phenomenon, "a long historical pedigree is not a *prerequisite* for government speech." *Mech*, 806 F.3d at 1076 ("other indicia of government speech" overcame a lack of historical evidence). Regardless, Florida administrative agencies regularly argue cases before administrative law judges and speak through those efforts. *See generally* Fla. Stat. Ch. 120. These actions are not open forums for public discourse; they are structured proceedings in which the agency represents the State and advocates for the enforcement of state law. Like the parents participating in the State Review Process, the agency's participation is guided by statutory mandates and regulatory objectives. This is particularly evident in areas such as professional licensing where agencies routinely initiate enforcement actions to protect public welfare and ensure legal compliance. Thus, although the parents who participate in the State Review Process are private citizens, they stand in the shoes and historical role of the government in its enforcement of Florida Law. In other words, historically, the government is the entity speaking when it comes to advocating for the enforcement

34

of Florida Law before an administrative law judge. The State Review Process does not implicate the Parents' free speech rights regardless of the framework.

**II. The State Review Process Is a Nonpublic Forum with Lawful Restrictions that Are Reasonable and Viewpoint Neutral.**

**A. The State Review Board Is a Nonpublic Forum.**

Alternatively and assuming the State Review Process does implicate the Parents' speech, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius*, 473 U.S. at 799–800.

Thus, the Supreme Court has adopted forum analysis to determine whether the government's interest in "limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* at 800. Those four forums are: (1) traditional public forums, (2) designated public forums, (3) limited public forums, and (4) nonpublic forums. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215–16 (2015); *see also McDonough v. Garcia*, 116 F.4th 1319, 1325 (11th Cir. 2024) (explaining the evolution of the Supreme Court's forum categorization into four distinct types).

Forum analysis begins by identifying the relevant forum at issue. *Cornelius*, 473 U.S. at 799–800. Here, because the Parents' claims all rest on the theory that they have been excluded from the State Review Process based on their viewpoint, the relevant forum is the State Review Process. *See* Doc. 1 ¶¶ 119, 126, 137.

The next step is to determine—assuming the State Review Process even is a forum, *see supra* section I—the type of forum it is. *Cornelius*, 473 U.S. at 802. Briefly, a traditional public forum is a public area that has traditionally been used for public assembly and debate, like public streets and parks. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). A designated public forum arises when the government "intentionally" opens government property "that has not traditionally been regarded as a public forum" for the purpose of creating a public forum. *See Christian Legal Soc.*, 561 U.S. at 679 n.11. A limited public forum is one the government creates "for certain groups or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). A nonpublic forum "is not by tradition or designation a forum for public communication." *See Perry Educ. Ass'n*, 460 U.S. at 46. In a nonpublic forum, the First Amendment "does not guarantee access to property simply because it is owned or controlled by the government." *Id.* (quotation omitted). Nonpublic forums typically exist "[w]here the government is acting as a proprietor, managing its internal operations." *Lee*, 505 U.S. at 678. In

36

considering whether a public forum exists, courts analyze the policy and practice of the government to determine whether it "intended to designate a place not traditionally open to assembly and debate as a public forum." *Cornelius*, 473 U.S. at 802.

The State Review Process is not a traditional public forum, nor is it one that the state has opened for expressive activity—it is a nonpublic forum. *See id*. at 805-06. In creating the State Review Process, the government was not motivated by a desire to open a forum for debating the content of public-school libraries—a fact apparent in the law and strictly defined limits on objection categories. *See id.* Nor is the State Review Process open to the public; it is limited to only those parents whose objections to their district school board's potential noncompliance with section 1006.28(2)(a)6. have been denied. *See M.N.C. of Hinesville, Inc. v. U.S. Dep't of Def.*, 791 F.2d 1466, 1473–74 (11th Cir. 1986) (finding a nonpublic forum where the government limited access to a specific newspaper and did not intend to open an expressive forum for multiple newspapers). That the process is specifically not intended to facilitate public discourse is apparent from the limited bases to challenge the district school board's decisions—all dictated and defined by the law's prohibition on four categories of unlawful content. *See id*. This limited access underscores the nonpublic nature of the State Review Process. Far from a public forum, the State Review Process is a procedural device the state designed to

ensure that district school boards comply with the law and remove sexually or otherwise age-inappropriate material from public schools. *See* Fla. Stat. § 1006.28(2)(a)2.b. & (2)(a)6; Fla. Admin. Code R. 6A-1.094126(4).

Having determined that the State Review Process is a nonpublic forum, the last step in the forum analysis considers whether the restrictions "on subject matter and speaker identity . . . are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806; *see also Lee*, 505 U.S. at 679 (explaining in a nonpublic forum, the government may restrict access "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view"). If the restrictions meet the test, then they do not infringe on a would-be speakers' constitutional rights.

**B. The State Review Process Is Reasonable in Light of Its Purpose.**

The "touchstone" for evaluating restrictions in a nonpublic forum "is whether they are reasonable in light of the purpose which the forum at issue serves." *Perry Educ. Ass'n*, 460 U.S. at 49.[13]

---

[13] The Parents argue that the Appellees have the burden to prove the restrictions are reasonable because that is the standard the Third Circuit has applied in nonpublic forums. *See* Appellants' Brief at 35 (citing *NAACP v. City of Philadelphia*, 834 F.3d 435, 443 (3d Cir. 2016)). Neither the Supreme Court nor this Court have ever held that the government bears the burden in a nonpublic forum to prove that its restrictions are reasonable and the Parents' single-sentence argument should respectfully not move the Court to embark on creating a new

The Supreme Court has stressed that a restriction on "access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808. And speech restrictions in a nonpublic forum are reasonable, even if "the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum" are not incompatible. *Id*.

The State Review Board's restrictions—limiting participation to parents whose Statutory Objections have been denied—are reasonable in light of the purpose the State Review Process serves.

The State Review Board's purpose is evident in the law. H.B. 1069 requires district school boards to remove material that is pornographic, depicts or describes sexual conduct, "[i]s not suited to student needs and their ability to comprehend the material presented"; or "[i]s inappropriate for the grade level and age group for which the material is used" from their respective schools. Fla. Stat. § 1006.28(2)(a)2.b. Even if no parent objects, the district school board is still required by law to discontinue the use of any materials that contain restricted content. *See id*.

During the Local Objection Process, Parents can object to material based on specific and statutorily defined criteria, but at that local level, the entities regulated

---

circuit doctrine. *See id.* Regardless of who bears the burden, the participation restrictions on the State Review Process are reasonable in light of the forum's purpose.

by section 1006.28(2)(a)1.b.—the district school boards—are the bodies that decide whether the objection has merit. *See* Fla. Stat. § 1006.28(2)(a)1.b. The local district school boards are required by law to remove content that meets the criteria in section § 1006.28(2)(a)1.b. and without the State Review Process, the Local Objection Process would be an entirely self-policing exercise. The State Review Process, therefore, provides an accountability mechanism by allowing the State to conduct oversight of denied Statutory Objections and ensure the district school boards are following the law. There is no such need for oversight of district school boards' decisions to remove content, because it is not unlawful for district school boards to remove material that is not prohibited under the law; it is unlawful for them to retain material that is. *See id.* Florida Law mandates that the FSBE ensures district school boards comply with the law. *See* Fla. Stat. § 1008.32 ("The State Board of Education shall oversee the performance of . . . district school boards . . . in enforcement of all laws and rules."). The State Review Process is therefore intended to confirm that district school boards follow H.B. 1069's procedures and content restrictions. *See id*.

Incidentally, the state is within its right to dictate what should and should not be on the shelves in public school classrooms and libraries. School districts "possess significant discretion to determine the content of [its] school libraries." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1221

40

(11th Cir. 2009) (quoting *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 870 (1982) (plurality opinion)). Although this Court has not addressed whether the government's "book collection (and book removal) decisions" for school libraries are "government speech" (such that the Free Speech Clause would not apply), *see id.* at 1201-02, the D.C. Circuit Court of Appeals has said that "the government speaks through its selection of which books to put on the shelves and which books to exclude," *PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005); *see also Bryan v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (Kavanaugh, J., concurring) ("'[G]overnment speech' can include not only the words of government officials but also compilation of the speech of third parties by government entities such as libraries.") (quotation omitted). The State engages in government speech when it collects private speech for public use and—as a corollary—speaks "through the removal of speech that the government disapproves." *See McGriff*, 84 F.4th 1333–34 (quoting *Mech v. Sch. Bd.*, 806 F.3d 1070, 1074 (11th Cir. 2015)); *see also Gundy*, 50 F.4th at 71; *Wood*, 142 F.4th at 1293. In any event, the State is firmly within its authority to dictate the removal of explicit and inappropriate content for minors. *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986) (recognizing the authority of schools to protect minors "from exposure to sexually explicit, indecent, or lewd speech"); *Finley*, 524 U.S. at 584 ("it is well established that 'decency' is a permissible factor where

41

'educational suitability' motivates its consideration"); *Virgil v. Sch. Bd. of Columbia Cnty.*, 862 F.2d 1517, 1518 (11th Cir. 1989) (removal of previously approved textbook from high school elective class was justified by a legitimate concern about the book's "appropriateness").

Given this legal framework, it is reasonable for the State to limit the State Review Process to cases where a district school board has declined to remove unlawful material following a parent's Statutory Objection and to limit objections to those enumerated in the statute. *See, e.g.*, *Cornelius,* 473 U.S. at 807–10 (restrictions on participation in a federal workplace charity drive were reasonable in light of the purpose of the drive); *Perry Educ. Ass'n*, 460 U.S. at 50–54 (differential access to a school district's internal mail system was reasonable in light of the purpose the mail system served); *M.N.C. of Hinesville*, 791 F.2d at 1476 (granting a civilian-published newspaper preferential access to distribute its papers on military bases but denying use of those same distribution points to a competing newspaper was reasonable in light of the forum's purpose). The process is not designed to adjudicate every disagreement over educational content, but to ensure that district school boards comply with the law.

The Parents argue that the State Review Process' purpose is not to uphold the law restricting controversial content, but to "establish a process for parents to request the appointment of a special magistrate if they disagree with [a] local

decision about an objection to" a book's availability. Appellants' Brief at 35 (quoting Doc. 1 ¶¶ 50-51). This argument fails for two reasons: (1) it was never presented to the district court and therefore not preserved and (2) it is circular.

First, the Parents never argued to the district court on the motion to dismiss that the State Review Process' purpose as a forum was to give parents a process to request a special magistrate regarding their disagreements over book objections. Instead, the Parents argued that State Review Process' purpose was to "determine facts relating to the school district's determination, consider information provided by the parent and the school district, and render a recommended decision." Doc. 14 at 32 (quoting Fla. Stat. § 1006.28(2)(a)6.). Generally, appeals courts will not consider an issue that was not raised in the trial court for the first time on appeal. *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1461–62 (11th Cir. 1990). Thus, to preserve an argument for appeal, a party "must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." *Id*. The Parents did not do that here and so have not preserved this argument.[14]

---

[14] The Parents make reference in their complaint to the Department of Education's announcement regarding a plan to "establish a process for parents to request the appointment of a special magistrate if they disagree with the local decision about an objection to materials used in school or classroom libraries." Doc. 1 ¶ 50. But an oblique reference to the theory in one paragraph of a complaint

Second, and in any event, the new purpose the Parents have debuted here on appeal is superficial and circular to the point of being meaningless. That is, the purpose the Parents have attached to the State Review Process is a broad way of describing the State Review Process itself—it is not the purpose of the State Review Process. In simpler terms the Parents would have us understand the State Review Process' purpose is simply to provide access to the State Review Process.

Still, the reasonableness of the limitations on parent participation in the State Review Process is further confirmed by the multiple and easily accessible alternative avenues for parents to voice their objections to district school board actions. *See Perry Educ. Ass'n*, 460 U.S. at 53-54. These alternate channels include school board meetings, letter-writing campaigns, picket lines, op-eds, social media posts, and the like. *See* Doc. 11 at 17; *see also* Doc. 1 ¶¶ 101-02, 113. This range of options is similar to other cases where restrictions on access were found to be reasonable. *See, e.g., Perry Educ. Ass'n*, 460 U.S. at 53 (alternatives ranged "from bulletin boards to meeting facilities to the United States mail"); *Greer v. Spock*, 424 U.S. 828, 839 (1976) ("members of the Armed Forces stationed at Fort Dix are wholly free as individuals to attend political rallies, out of uniform and off base");

---

is hardly sufficient to alert the district court of an ostensibly key argument on a motion to dismiss. *See In re Pan Am. World Airways, Inc*., 905 F.2d at 1462 (noting that a theory highlighted in a defendant's earlier statement of the facts but not clearly raised during the relevant phase of the litigation was not preserved to argue on appeal).

*Cornelius*, 473 U.S. at 809 (reasonable alternatives to solicit donations from federal employees outside a nonpublic forum included "direct mail and in person solicitation outside the workplace"); *see also Christian Legal Soc.*, 561 U.S. at 690 (in a limited public forum reasonable alternatives included "access to school facilities to conduct meetings and the use of chalkboards and generally available bulletin boards to advertise events").[15]

The State Review Process is ultimately a procedure for the State to perform oversight over district school boards' compliance with state law. Its restrictions are therefore reasonable to accomplish its ends.

---

[15] The Parents argue that consideration of the reasonable alternatives available to them have no part in a First Amendment analysis, but they misconstrue the argument. *See* Appellants' Brief at 32. Consideration of the alternative channels is simply part of the analysis to gauge the reasonableness of restrictions in a nonpublic or limited public forum. *See* cited cases *supra* 38-39; *see also Christian Legal Soc.*, 561 U.S. at 690 ("our decisions have counted it significant that other available avenues for the group to exercise its First Amendment rights lessen the burden created by [forum access restrictions]"). In any event, the cases the Parents cite for their proposition are inapplicable. *See Reno v. Am. C.L. Union*, 521 U.S. 844 (1997) (not a limited or nonpublic forum case at all); *Crowder v. Hous. Auth. of City of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993) (considering a limited public forum under the old rules now only applicable to designated public forums); *see also McDonough*, 116 F.4th at 1324 (explaining how the Supreme Court "moved limited public forums out of the designated public forum bucket").

**C. The State Review Process Draws Distinctions Based on Status, Not Viewpoint.**

The Parents argue that the State Review Process violates the First Amendment because it is only available to parents whose objections were denied by district school boards and not to parents who seek to retain material that the district school boards have removed. The restriction does provide differential treatment, but it is based on procedural status—not viewpoint.

In a nonpublic forum the government has "the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry Educ. Ass'n*, 460 U.S. at 49. The government is free to exclude a speaker from a nonpublic forum if he "wishes to address a topic not encompassed within the purpose of the forum, or if he is not a member of the class of speakers for whose especial benefit the forum was created." *Cornelius*, 473 U.S. at 806 (citations omitted). While such status-based restrictions may be verboten in a traditional public forum, they are essential to "limiting a nonpublic forum to activities compatible with the intended purpose of the property." *Perry Educ. Ass'n*, 460 U.S. at 49.

The Supreme Court's decision in *Perry Education Association v. Perry Local Educators' Association* is instructive. In *Perry*, the Court considered a nonpublic forum in the form of a school district's internal mail system. *Id*. at 48-49. The Court upheld the district's policy of granting exclusive access to its internal mail system to the teachers' exclusive bargaining representative, while

denying access to a rival union. *See id*. at 40-41, 49. In upholding the restriction, the Court found that this distinction was based not on viewpoint but on the status of the speaker—specifically, whether the union had been elected to represent all teachers in collective bargaining. *Id*. at 49.

Similarly, the State Review Process is not open to the general public or to all parents equally, it is available to only to those parents who have filed a formal objection, based solely on statutory criteria, that was denied by their local district school board. The only distinction that matters is whether the would-be speaker has the procedural status of having had a Statutory Objection denied by their district school board. This limitation applies universally and is not predicated on the ideology of the parent's objection.

Further, like in *Perry*, where the rival union had "no official responsibility in connection with the school district" such that it "need not be entitled to the same rights of access" to the mail system, the Parents, in seeking to retain removed material, have no official or statutory basis for their demands. *Id*. at 51. By contrast, section 1006.28 officially and explicitly requires removal of content that meets the Statutory Objections, i.e., the only bases available to access the State Review Process in the first place. Thus, like the bargaining union in *Perry*, those parents whose Statutory Objections have been rejected by a self-policing district school board have an official basis in law to which to tether their objections.

The Parents' reliance on *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024) as "directly relevant" is misplaced. Appellants' Brief at 26-27, 29-30. The statute at issue in *Honeyfund* banned private employers from holding mandatory meetings to promote diversity, equity, and inclusion initiatives. *Id*. at 1275–76. In finding the law unconstitutional, this Court rejected the state's defense that the regulation governed conduct (in the form of the holding of meetings) rather than speech. *Id*. at 1278. But *Honeyfund* has little application here. In *Honeyfund*, the law did not create a forum, much less a forum that required the Court to grapple with the rules and standards governing nonpublic or limited public forums, which are much different than the rules and standards that apply to laws directly restricting private speech in private settings. *See id.* 1280–81 (requiring application of strict scrutiny). Notably too, in *Honeyfund*, the state conceded that the law at issue drew distinctions based on viewpoint. *Id*. at 1275. Appellees have never argued that the State Review Process restrictions constitute conduct or conceded they implicate viewpoint. Instead, Appellees' position remains that the participation requirements are based on the speaker's status and are reasonable considering the purpose of the State Review Process, which is acceptable in a nonpublic forum. *See Perry Educ. Ass'n*, 460 U.S. at 49; *Cornelius*, 473 U.S. at 806.

For similar reasons the Parents' analogies to *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015) and *Otto v. City of Boca Raton, Florida*, 981 F.3d 854, 860 (11th Cir. 2020) are inapposite. *See* Appellants' Brief at 28-30. Both dealt with purely private speech—not government forums, which (again) have different rules—and restrictions on content, which are allowed in both limited and nonpublic forums. *See McDonough*, 116 F.4th at 1322. In *Reed*, the regulations imposed size, duration, and location restrictions on private outdoor signs displayed without a permit depending on the communicative content of the signs—i.e., whether they were political, ideological, or directed the public to an event. 576 U.S. at 159. The Court rejected that the sign restrictions were speaker-based because the content restrictions applied equally, no matter who the speaker was. *Id*. at 169–70. In other words, the facts in *Reed* did not lend themselves to a speaker-based analysis. *See id*. Likewise in *Otto*, this Court considered an ordinance banning therapists from engaging in counseling to change a minor's sexual orientation. 981 F.3d 854. The Court rejected the local governments' argument that the restrictions constituted professional regulation and conduct, rather than speech, because the local governments' argument amounted to a labeling game. *Id*. at 861–62. The case also did not deal with forums or status-based restrictions.

In the forum context, meanwhile, status-based restrictions are a feature of nonpublic forums, not a flaw. This Court and the Supreme Court have repeatedly

49

found that status-based distinctions are an acceptable way to limit a nonpublic forum's scope. In *Arkansas Education Television Commission v. Forbes*, for example, a state-owned public television broadcaster sponsored a candidate debate but excluded one of the candidates who qualified for ballot placement from participating in the debate. 523 U.S. 666, 669–71 (1998). The court upheld the limitation even though the speaker wanted to engage in exactly the same type of speech as the other candidates due to his status as a candidate with "no appreciable public interest." *Id*. at 682; *see also Chandler v. Georgia Pub. Telecommunications Comm'n*, 917 F.2d 486 (11th Cir. 1990) (exclusion of the Libertarian candidates for governor and lieutenant governor from a public television station candidate debate was reasonable and viewpoint neutral because it was based on his status as a candidate who was not a member of one of the two major political parties). Status-based distinctions are also an appropriate way to restrict access to a limited public forum (which Appellees do not concede is at issue here). *See Christian Legal Soc.,* 561 U.S. at 681 (explaining the state may reserve limited public forums for certain groups and exclude classes of speakers who are not a member of the group for whose benefit the forum was created).

**D. Plaintiffs Have Not Otherwise Alleged Viewpoint Discrimination.**

The State Review Process does not otherwise discriminate based on the Parents' viewpoint. To state a claim for viewpoint discrimination, Plaintiffs must

plausibly allege that they were excluded "solely to suppress the point of view [they] espouse[] on an otherwise includible subject." *Cornelius*, 473 U.S. at 806. They have not done so.

The State Review Process does not inquire into the content of a parent's beliefs. It simply provides a mechanism for State oversight when a parent's formal objection—that material their public school district is making available to students contains illegal content—is denied. The Parents cannot access the process, not because of their viewpoint, but because they did not file an unsuccessful objection protesting an allegedly illegal action on the part of their school district. As in *Perry*, the distinction is based on official status, not ideology.

The Parents have not otherwise pleaded factual allegations that their exclusion is based solely on suppressing their viewpoint. Viewpoint discrimination is an "'egregious form of content discrimination' that targets not merely a subject matter 'but particular views taken by speakers on the subject.'" *Vidal v. Elster*, 602 U.S. 286, 293 (2024) (quoting *Rosenberger*, 515 U.S. at 829). The Parents argue that now-former Education Commissioner Diaz revealed his preferred viewpoint by calling Parent Farrell an "activist" during a press conference. Appellants' Brief at 25 (quoting Doc. 1 ¶ 91). But the term "activist" is not indicative of bias, it is an accurate description for someone who works in support of a cause to achieve political or social change, as Parent Ferrell is undoubtably doing by attempting to

change the State Review Process' structure. *See* Activist, Oxford Advanced Learner's Dictionary, http://bit.ly/3GuG9r9 (last visited July 29, 2025); Activist, The American Heritage Dictionary, http://bit.ly/408YlNG (last visited July 11, 2025). The only other allegations of viewpoint suppression in the complaint are either (1) restatements of how the process works (that it is based on the parents' status), *see, e.g.,* Doc. 1 ¶¶ 68-69; and (2) opinions from supporters of the Parents' position that the process is discriminatory, *see, e.g.*, *id.* ¶¶ 62-66 (detailing comments from opponents of the State Review Process at a hearing). Neither type of allegation provides a basis for the Court to reasonably infer that Appellees' sole purpose in creating and enforcing the State Review Process restrictions is to suppress the Parents' viewpoint. *See Iqbal*, 556 U.S. at 678–79. Because the Parents' exclusion is based on their procedural status and not on alleged facts that Appellees are solely interested in suppressing their viewpoint, the Parents' First Amendment claims must fail. *See id*.[16]

---

[16] The Parents belatedly assert in their brief that the State Review Process also somehow violates their First Amendment right to petition the government for redress of grievances. Appellants' Brief at 33. There are a couple of problems with this. First, the Parents never asserted a claim under the Petition Clause; all their claims were asserted under the Free Speech Clause. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387-88 (2011) (explaining that the clauses though related serve different purposes); *see also Brennan v. Norton*, 350 F.3d 399, 417-18 (3d Cir. 2003) (rejecting a Petition Clause argument because the appellant's complaint only asserted a First Amendment claim under the Free Speech and Association Clauses). Second and regardless, the Parents never raised this argument to the

## CONCLUSION

The State Review Process' restrictions on participation do not violate the Parents' First Amendment rights and the decision of the district court dismissing their complaint on the merits should be affirmed.

Dated:  August 14, 2025

Respectfully submitted,

By:   */s/ Alan Lawson*
ALAN LAWSON
JESSICA SLATTEN
CAROLINE MAY POOR
**Lawson Huck Gonzalez, PLLC**
215 S. Monroe Street, Suite 320
Tallahassee, FL 32301
850-825-4334
alan@lawsonhuckgonzalez.com
jessica@lawsonhuckgonzalez.com
caroline@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
leah@lawsonhuckgonzalez.com

*Counsel for Appellees*

---

district court and so it is not preserved. *In re Pan Am. World Airways*, 905 F.2d at 1461–62.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,519 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Rule 32-4 of the Eleventh Circuit Rules. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

Dated: August 14, 2025                      By:    */s/ Alan Lawson*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By:    */s/ Alan Lawson*